**STATE of Iowa, Appellant,**

v.

**Bradley Scott MARY, Appellee.**

No. 84–523.

Supreme Court of Iowa.

May 22, 1985.

Thomas J. Miller, Atty. Gen., Joseph P. Weeg, Asst. Atty. Gen., and Phillip N. Norland, Co. Atty., for appellant.

R. Michael Sweesy, Mason City, for appellee.

Considered by McCORMICK, P.J., and McGIVERIN, SCHULTZ, CARTER, and WOLLE, JJ.

WOLLE, Justice.

In this involuntary manslaughter case, we granted the State's application for discretionary review to decide whether the trial court erred in suppressing evidence of defendant's blood-alcohol test. The trial court ruled that the State had not satisfied foundation requirements for use of the blood test. Central to the court's ruling was its determination that no weight could be given to certain evidence of habit offered by the State to show the manner in which the blood sample had been taken. Because we find that the trial court abused its discretion in failing to give due consideration to that evidence, we reverse and remand for a new hearing on the motion to suppress.

Defendant Bradley Scott Mary was charged by trial information with involuntary manslaughter under Iowa Code section 707.5(1) (1983). The trial information alleged that he had unintentionally, and by the commission of certain public offenses, caused the death of a passenger in the automobile he was driving on July 3, 1983. Those underlying public offenses included operating a vehicle while intoxicated, exceeding the speed limit, and failing to have his vehicle under control.

The evidence presented at the suppression hearing disclosed that a passenger in defendant's automobile was killed when defendant swerved the vehicle off the road and into a ditch. Defendant was removed from the accident scene by ambulance and taken to a nearby hospital. A deputy sheriff there invoked the implied consent procedures of Iowa Code chapter 321B to obtain a blood sample from defendant. The evidence was in conflict as to whether defendant understood what was happening at the time the officer explained his rights to him. The officer testified that defendant consented to have the blood sample drawn even though he refused to sign the implied consent form. *See* Iowa Code §§ 321B.4, .12, .13 (1983) (setting forth consequences of refusal to submit to chemical tests).

At the request of the deputy sheriff, a registered nurse named Peggy Kilborn obtained a blood sample from defendant. Kilborn removed the sample and gave it to the deputy sheriff who had its blood-alcohol content determined. When nurse Kilborn died unexpectedly, the State was forced to rely on habit testimony to show in detail how she had taken the sample.

In order to meet the foundation requirements for admissibility of the blood-alcohol test, the State offered the testimony of Doug Meyers, a registered nurse who had worked with Kilborn at the hospital where she had drawn the blood sample. Meyers testified that he had observed Kilborn remove blood ten to twelve times in the past, and she had routinely followed certain procedures:

First of all, she would tell the patients what she was going to do. Secondly, prepare the site with pHisoHex scrub and place a tourniquet above the site and use a device or a syringe and needle device to draw the blood from the vein. Then she would place the blood inside one of the red top tubes and give it to the law enforcement people.

Meyers also testified that nurse Kilborn had routinely used a sterile instrument to remove the blood. When Meyers' testimony was offered in evidence, defendant objected on the ground that his testimony was immaterial and insufficient to establish foundation requirements for admissibility of a blood test. The trial court first expressed doubt that habit testimony was admissible at all. Although the trial court

then overruled defendant's objection and permitted Meyers to testify, its written ruling sustaining the motion to suppress disclosed that the testimony was given no weight. The trial court wrote:

> [T]he blood test cannot be admitted for the reason that the defendant has no opportunity to cross-examine Peggy Kilborn and to determine whether she withdrew the blood in the proper manner, made the proper sealing of the same and delivered the same in the appropriate manner. The defendant should not be forced to go to trial on the question of this blood test when the proper foundation for the admission of the blood test is not available to the defendant and the right to cross-examine.

### I. *Admissibility of Testimony of Habit.*

■■■ The admissibility of foundation evidence is a matter ordinarily entrusted to the sound discretion of the trial court. *See State v. Gibb*, 303 N.W.2d 673, 681 (Iowa 1981); Iowa R.Evid. 104. We review for abuse of discretion. *State v. Hershey*, 348 N.W.2d 1, 2 (1984). Foundation evidence is required for the admission of a blood test to insure the reliability and accuracy of the test. *See State v. Steadman*, 350 N.W.2d 172, 174 (Iowa 1984) (finding compliance with foundation requirements of Iowa Code ch. 321B); *Henkel v. Heri*, 274 N.W.2d 317, 319–22 (Iowa 1979) (discussing extra-321B foundational criteria for admission of blood test in civil damage action).

■■ Iowa Rule of Evidence 406, applicable to this case, states:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Iowa law preceding adoption of the Iowa Rules of Evidence in 1983 was consistent with rule 406. Iowa R.Evid. 406 committee comment (1983); *see State v. Don*, 318 N.W.2d 801, 806 (Iowa 1982) ("Evidence of habit is admissible to show that a person is likely to have acted on a particular occasion in conformity with that habit."); *State v. Shelton*, 176 N.W.2d 159, 161–62 (Iowa 1970) (permitting nurse who could not remember withdrawing blood from specific defendant to testify as to her habit in obtaining blood samples); *Barrick v. Smith*, 248 Iowa 195, 199–200, 80 N.W.2d 326, 328 (1957) (permitting testimony by bus driver concerning routine practice in turning on flashing stop lights and extending stop arm of school bus). Commentators too have endorsed the use of habit evidence to establish conduct on a particular occasion, so long as the specific instances from which the habit has been inferred were sufficiently numerous and occurred under substantially similar circumstances to qualify as a habit. *See* 2 Wigmore, Evidence § 376 (C. Chadbourn Rev.1979); C. McCormick, Evidence § 162, at 341 (1954); *see generally* Fed.R.Evid. 406 advisory committee note.

■■■ Defendant contends that we should uphold the trial court's ruling because ten to twelve instances of specific conduct do not sufficiently establish the pattern of conduct necessary to prove routine practice and habit. We will uphold the discretionary ruling of a trial court on admissibility of evidence if the ruling can be sustained on any ground appearing in the record. *State v. Jespersen*, 360 N.W.2d 804, 806 (Iowa 1985); *State v. McCowen*, 297 N.W.2d 226, 227 (Iowa 1980). For example, if the trial court in the exercise of sound discretion had determined that the State had not satisfied the sufficient-instances requirement of Rule 406, we might well find no abuse of that discretion. We cannot do so on this record, however, because the trial court clearly exercised no discretion on the matter. Instead, the trial court found the testimony entitled to no weight solely because nurse Kilborn could not be cross-examined. The right to cross-examine the person whose habit is in question is not a predicate to admissibility of habit evidence. Indeed, the use of evidence of habit is often mandated by the unavailability or lack of recollection of the person

whose conduct is in question, circumstances making cross-examination impossible or of very limited value.

We must remand the case for a new hearing on the suppression motion in order that the trial court may exercise discretion in deciding (1) whether the requirements for habit testimony have been satisfied, and (2) if so, what weight the testimony should receive in satisfying the foundation requirements for admissibility of the blood test result.

II. *Proceedings on Remand.*

■ A. *Foundation Requirements for Admission of the Blood Test.* One of the purposes of granting discretionary review, which is interlocutory in nature, is to assure that a case is determined under correct legal standards in the trial court. We avail ourselves of this opportunity to have the trial court on remand apply correct statutory foundation requirements in deciding defendant's motion to suppress. *See State v. Seager,* 341 N.W.2d 420, 425 (Iowa 1983).

■ During the hearing on defendant's motion to suppress, counsel for the parties stipulated that the foundation requirements for evidentiary use of a blood test set forth in Iowa Code chapter 321B should not be applied in this case because defendant had not been arrested before the blood sample was drawn. The trial court accepted that stipulation, apparently relying on an earlier version of the statute which provided that implied consent could be invoked only if the peace officer had made an arrest for driving while intoxicated, or when other circumstances not here involved were present. Iowa Code § 321B.3 (1981); *see State v. Ransom,* 309 N.W.2d 156, 158 (Iowa Ct.App.1981); *State v. Musso,* 309 N.W.2d 154, 156 (Iowa Ct.App.1981). Apparently neither the trial court nor the parties were aware that effective July 1, 1982, well before the incident in question, chapter 321B was amended to extend its application to a case like this where the driver had not been arrested but had "been involved in a motor vehicle accident or colli-

sion resulting in personal injury or death." 1982 Iowa Acts ch. 1167, § 15; (codified at Iowa Code § 321B.4(1)(b) (1983)). The trial court was not bound by the parties' stipulation to the contrary, because the stipulation of litigants cannot be invoked to bind or circumscribe a court in its determination of questions of law. *See State v. Aumann,* 236 N.W.2d 320, 322 (Iowa 1975) ("Stipulations as to the law do not settle for the court what the law is, and consequently are of no validity."); 73 Am.Jur.2d *Stipulations* § 5 ("While, ordinarily, courts are bound by stipulations of litigants, that rule cannot be invoked to bind or circumscribe a court in its determination of questions of law.").

■ The deputy sheriff obtained the sample of defendant's blood by invoking chapter 321B procedures, and therefore the trial court should have applied the unique foundation requirements imposed by that statute, not extra-321B requirements, in deciding whether to suppress the result of defendant's blood test.

■ B. *Constitutional Issues.* In his motion to suppress defendant asserted that admission of the blood test would violate his constitutional rights under the fourth, fifth, sixth and fourteenth amendments. The trial court did not address those issues, basing its suppression of the blood test entirely on the ground that the State's habit testimony was inadmissible to establish an adequate foundation for use of the blood test at trial. Because the question of suppression of the blood test must be remanded for a new hearing, we need not and therefore do not reach those constitutional issues. *See State ex rel. Shanahan v. Iowa District Court,* 356 N.W.2d 523, 527 (Iowa 1984); *George H. Wentz, Inc. v. Sabasta,* 337 N.W.2d 495, 498 (Iowa 1983); *Hines v. Illinois Central Gulf Railroad,* 330 N.W.2d 284, 286 (Iowa 1983).

REVERSED AND REMANDED WITH DIRECTIONS.