**Brad Scott MARY, Appellee,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION, Appellant.**

**No. 85–856.**

Supreme Court of Iowa.

Feb. 19, 1986.

Thomas J. Miller, Atty. Gen., and David A. Ferree, Asst. Atty. Gen., for appellant.

R. Michael Sweesy, Mason City, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The Department of Transportation (department) appeals from the district court decree reversing a driver's license revocation. In a hearing before the department, the agency sustained the revocation of Brad Scott Mary's driver's license because his blood test yielded an alcohol concentration of .10 or more. On judicial review the district court concluded that the blood sample could not be used as a basis to revoke Mary's license and ordered the department to return his driver's license. Since we find no error in the agency's decision, we reverse the trial court and reinstate the revocation.

On July 3, 1983, Mary was involved in a motor vehicle accident in which he sustained personal injuries. As a result he and two other accident victims were taken by ambulance to a Mason City hospital. There is no dispute that Mary was the driver of a vehicle and that officers had reasonable grounds to believe he was operating a motor vehicle while under the influence of alcohol in violation of Iowa Code section 321.281. An officer read the implied consent form to Mary and made a written request that he consent to a blood test for alcohol analysis. Although Mary did not sign the consent form, the officers testified that he consented to the test. At the officers' request, a nurse took a blood

sample from Mary and the tests revealed an alcohol concentration of .177. Since the alcohol concentration was .10 or more, the department revoked Mary's driver's license under the provisions of Iowa Code section 321B.16.

Mary contested the department's action in revoking his license. He was provided an evidentiary hearing and the hearing officer sustained the revocation. Iowa Code §§ 321B.26; 17A.18. In the final agency decision a reviewing officer affirmed this decision and Mary sought judicial review in district court. During the administrative proceedings, Mary contended that he was incapable of consenting to the blood test because of physical injury. He described his injuries as a scrape on his forehead, a concussion, a blood clot in his eye and a stiff back. Mary testified that he had no memory of the police officers at the hospital and did not recall the nurse withdrawing the blood. He maintained that the officers erred in not obtaining certification from a licensed physician that he was incapable of consent or refusal, Iowa Code section 321B.11, in advance of testing.

The hearing officer determined as a matter of fact that Mary had consented to the blood test. The reviewing officer indicated that the statements made by Mary to the officers indicated sufficient comprehension for the officers to make a valid request, and that the officers acted reasonably with the information available to them. Both the hearing and reviewing officers concluded that the burden was on Mary to show that he complied with all the lawful requirements for the retention of his license.

On judicial review, the district court reversed the agency decision stating "that such action is in violation of statutory provisions; affected by other error at law; is unsupported by substantial evidence; and is unreasonable, arbitrary and capricious and characterized by an abuse of discretion and clearly unwarranted exercise of discretion." The court noted that Mary was incapable of consenting to or refusing the withdrawal of the blood sample and further stated that "[t]here is no question that the petitioner never gave the officers consent to take the blood test." The court concluded that the failure to have a licensed physician present and take the blood specimen from Mary was in violation of his rights.

On appeal the department initially claims that the trial court went beyond the record and engaged in its own fact-finding when the court relied on testimony from another trial regarding the present case. It urges that this is contrary to the principles of judicial review of a contested case proceeding and asks that this court review the record as the district court should have under section 17A.19(8). Finally, the department claims that Mary did not meet his burden of proof to show that he was incapable of consenting or refusing to submit to the blood test.

I. *Matters outside the record.* The department urges that the trial court relied upon matters outside the record in its ruling on the petition for judicial review. The issue before the district court was whether there was substantial evidence in the record to support the agency's determination that Mary had consented to the withdrawal of his blood for testing and, thus, obviated the need to comply with section 321B.11. Mary did not dispute the agency finding that he had verbally consented to the test, but rather claimed he was incapable of consenting or refusing to submit to the test. The district court adopted Mary's contention; however, the department points out that the district court made the following statement:

> This court is thoroughly familiar with the facts in this case as he was the trial judge in *State v. Mary*, which is now on appeal to the Iowa Supreme Court.[1] In that case the County Attorney in open court stated that he was not relying upon 321B and the court assumed that the County Attorney was convinced that he could not establish the proper foundation for the taking of the blood.

1. That appellate decision has been resolved in

*State v. Mary,* 368 N.W.2d 166 (Iowa 1985).

The department urges the trial court relied on matters in another trial and asserts that this is contrary to principles of judicial review.

■ There is justification for the department's complaint. The district court in judicial review proceedings functions in an appellate capacity to correct errors of law. *Mathis v. State Conservation Commission*, 369 N.W.2d 435, 437 (Iowa 1985). In judicial review of a contested case proceeding the district court is limited to the record made before the agency. *Black v. University of Iowa*, 362 N.W.2d 459, 463 (Iowa 1985). The district court should not have considered matters that arose in another hearing or case.

■ This matter does not, however, have to be remanded to the district court for further proceedings. It is our duty, on appeal, to correct errors of law made by the district court. *Mathis*, 369 N.W.2d at 437. In so doing, we review the agency action as the district court should have pursuant to section 17A.19(8).

II. *Review of the agency action.* The basic issue throughout these proceedings concerns the validity of the procedures employed by the officers in obtaining the sample of Mary's blood for testing. The withdrawal of blood was sought pursuant to statutory authority. We now examine that authority.

Authority for chemical testing of body substances from persons suspected of driving while intoxicated is provided in Iowa Code chapter 321B. The legislative policy of the chapter is to aid the enforcement of laws that prohibit the operation of motor vehicles while under the influence of alcoholic beverages or other drugs. § 321B.1. A person who operates a motor vehicle under circumstances in which there are reasonable grounds to believe that the person has been driving while under the influence of alcohol, is deemed to have consented to the withdrawal of certain body substances from him or her for chemical testing of alcohol concentration. § 321B.4.[2] However, a driver has a right to refuse to submit to the test pursuant to sections 321B.4(2) and 321B.13. If the person refuses to submit to the chemical testing, and the peace officer had reasonable grounds to believe the person had been operating a motor vehicle in violation of section 321.281, the person's license to drive is revoked. § 321B.13. Additionally, implied consent to chemical testing continues even though the driver is dead, unconscious or is otherwise in a condition rendering him incapable of consent or refusal, subject to a certificate from a physician in advance of testing. § 321B.11.[3] If the test results

2. The implied consent to test provision states in part that:

> 1. Any person who operates a motor vehicle in this state upon a public highway under circumstances which give reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, saliva, or urine, and to a chemical test or tests of the specimens for the purpose of determining the alcoholic content of the blood, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, and if any of the following conditions exist:
> a. A peace officer has lawfully placed the person under arrest for violation of section 321.281.

> b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.
> c. The person has refused to take a preliminary breath screening test provided by this chapter.
> d. The preliminary breath screening test was administered and it recorded ten hundredths or more of one percent by weight of alcohol in the blood.

Iowa Code § 321B.4(1) (1983).

3. Section 321B.11 (1983) states:

> Any person who is dead, unconscious or who is otherwise in a condition rendering the person incapable of consent or refusal is deemed not to have withdrawn the consent provided by section 321B.4, and the test may be given; provided that a licensed physician shall certify in advance of such test that such person is dead, unconscious or otherwise in a condition rendering that person incapable of consent or refusal.

indicate an alcohol concentration of .10 or more, the department shall revoke the driver's license. § 321B.16.[4]

The department urges that it properly requested a blood sample from Mary pursuant to section 321B.4 and that Mary in fact consented to the withdrawal. It further claims that Mary did not meet his burden of showing that his consent was invalid or that compliance with section 321B.11 was necessary in advance of testing. More precisely, the claims present the questions of whether the agency erred in finding a physician's certificate was not necessary before the specimen was taken and, if not, whether substantial evidence supports the agency finding that Mary did not withdraw his statutory implied consent to take the test.

■■■ We agree with the department that the burden of proof to show the inadmissibility of the blood test is upon Mary. Additionally, we agree that Mary did not meet this burden. We have long recognized that criminal prosecutions for drunk driving and administrative proceedings for driver's license revocation under implied consent provisions are separate and distinct. In the administrative proceedings the driver has the burden of proving by a preponderance of the evidence that he had complied with the implied consent law and that the peace officers had not satisfied the procedural requirements thereof. *Heidemann v. Sweitzer*, 375 N.W.2d 665, 670 (Iowa 1985); *McCrea v. Iowa Department of Transportation*, 336 N.W.2d 427, 428–29 (Iowa 1983); *Crosser v. Iowa Department of Public Safety*, 240 N.W.2d 682, 684 (Iowa 1976); *Carroll v. Iowa Department of Public Safety*, 231 N.W.2d 19, 21 (Iowa 1975); *Swenumson v. Iowa Department of Public Safety*, 210 N.W.2d 660,

661 (Iowa 1973); *Shellady v. Sellers*, 208 N.W.2d 12, 13 (Iowa 1973); *Buda v. Fulton*, 261 Iowa 981, 985–86, 157 N.W.2d 336, 338–39 (1968). The final agency ruling held that Mary had failed to sustain his burden of proof. The reviewing officer found that Mary consented to the withdrawal of his blood and therefore, by implication, concluded that section 321B.11 was inapplicable.

Section 321B.11 applies when a person is "dead, unconscious or otherwise in a condition rendering the person incapable of consent or refusal." The department urges that the term "otherwise incapable" means something similar to dead or unconscious. It further urges that it is improper to require an inquiry into such subjective matters as to whether Mary's consent was knowingly and intelligently given.

■■■ We believe that section 321B.11 applies only when the person is in such a condition that the person is incapable of manifesting a choice concerning whether to withdraw the statutory implied consent to take the test. This was the conclusion of the Alaska Court of Appeals under an analogous statute in *Bass v. Municipality of Anchorage*, 692 P.2d 961, 965 (Alaska Ct.App.1984) (statute intended to apply "only to situations where a blood-alcohol test could be conducted without any violence such as when an arrestee is unconscious"). It was also the conclusion of the Hawaii court in *Rossell v. City & County of Honolulu*, 59 Hawaii 173, 579 P.2d 663, 670 (1978) (the statute applies only when an arrestee is incapable of manifesting "*any consent or refusal* to take a sobriety test"). In the present case, no dispute exists that Mary manifested a capacity to exercise his statutory right to refuse the

---

**4.** Section 321B.16 (1983) states in part:

Upon certification by the peace officer that there existed reasonable grounds to believe the person to have been operating a motor vehicle in violation of 321.281 and that the person submitted to chemical testing and the test results indicate ten hundredths or more of one percent by weight of alcohol in the person's blood, the department shall revoke the person's license or permit to drive or

nonresident operating privilege for a period of one hundred twenty days if the person has no revocation within the previous six years under section 321.209, subsection 2, section 321.281 or this chapter, two hundred forty days if the person has one previous revocation under those provisions, and one year if the person has two or more revocations under those provisions arising from separate occurrences.

test. Although he was not fully coherent, the officers testified he asked them a couple of questions about the implied consent law and then commented "damned if I do and damned if I don't." In these communications the agency did not err in rejecting Mary's contention that a physician's certificate was required prior to the withdrawal of the specimen.

■ We also believe substantial evidence supports the agency finding that Mary did not refuse to take the test. At most, he manifested confusion, but his equivocation does not constitute a refusal to take the test.

While our cases are not directly on point, our appellate decisions support our conclusions in this case. In *McDowell v. Iowa Department of Transportation*, 356 N.W.2d 234, 236 (Iowa Ct.App.1984) (citing *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981)), the court of appeals indicated that the right to refuse to take the test is presumed to be an informed decision. The court also cited our decision in *Buda*, 261 Iowa at 990, 157 N.W.2d at 341, where we rejected an operator's contention that he did not understand that the refusal to submit to chemical testing would result in the revocation of his license. *McDowell*, 356 N.W.2d at 236. When a driver claimed that he did not understand the implied consent provisions because he was greatly excited and believed the officer himself sought to withdraw the blood sample at the scene, we stated that:

> It would be folly to excuse a refusal to comply with the implied consent law on the basis of the driver's own confusion. Such a defense would become increasingly available in direct proportion to his degree of intoxication. Such was not the intent of the legislature.

*Janssen v. Sellers*, 207 N.W.2d 746, 747 (Iowa 1973).

We conclude that the agency did not err in rejecting Mary's contention that a physician's certificate was required prior to the withdrawal of the specimen. Additionally, substantial evidence supports the agency finding that Mary did not withdraw his

statutory implied consent to take the blood-alcohol test. Accordingly, we reverse the district court and affirm the agency action.

REVERSED.